GULOTTA, Judge.
Defendants, Schwegmann Bros. Supermarkets and E.J. Brach and Sons Candy Company, appeal from a judgment awarding ten (10) plaintiffs (members of two *605 families) damages for varying degrees of nausea, and in some cases, diarrhea and vomiting resulting from the consumption of worm infested chocolate covered mint candies manufactured by Brach and sold by Schwegmann’s to plaintiffs. We affirm.
It is Schwegmann’s contention that because no evidence was introduced showing that Schwegmann knew or should have known of the presence of the worms in the Brach candy, the trial judge erred in casting them in judgment. Schwegmann also complains of the excessiveness of the awards.
Brach, on the other hand, claims the evidence establishes that infestation occurred only after the candy had been under the control of Schwegmann.
The uncontradicted evidence clearly establishes that plaintiffs purchased the worm infested Brach candy from Schweg-mann. Also uncontradicted is the fact that these plaintiffs ingested the candies and suffered varying degrees of nausea, and in some cases diarrhea and vomiting. Under these circumstances, we find no difficulty in concluding that plaintiffs are entitled to recover. More difficult, however, is whether liability is properly assessed against Schwegmann, or against Brach, or against both defendants.
LIABILITY OF RETAILER — SCHWEGMANN
In connection with a retailer’s liability this court in Gilbert v. John Gendusa Bakery, Inc., 144 So.2d 760 (La.App. 4th Cir. 1962) held liable a manufacturer and a retailer of doughnuts where a plaintiff became ill after eating the insect infested doughnuts. In that case we stated the manufacturer (Gendusa Bakery) and the vendor (Garrett’s Food Store) of food stuff designed for human consumption are virtual insurers that the merchandise is pure, wholesome, and free from foreign materials and deleterious substances. We found in that case a breach of an implied warranty that the doughnuts were wholesome and fit for human consumption. See also Deris v. Finest Foods, Inc., 198 So.2d 412 (La.App. 4th Cir. 1967).
However, in Demars v. Natchitoches Coca Cola Bottling Company, 353 So.2d 433 (La.App. 3rd Cir. 1978), writs denied, 354 So.2d 1384 (La.1978), the Court exonerated from liability a retailer in a case where broken glass was found in a bottled beverage dispensed from a vending machine owned by the manufacturer and leased to the retailer. In Demars, our brothers on the Third Circuit, citing McCauley v. Manda Brothers Provisions Co., 202 So.2d 492 (La.App. 1st Cir. 1967), affirmed, 252 La. 528, 211 So.2d 637 (La.1968), stated that a retailer cannot be held responsible to a plaintiff on a theory of implied warranty absent a showing that the retailer knew or should have known that the product sold is unwholesome.
Whether we apply the “virtual insurer” theory under implied warranty to a retailer as stated in the Gilbert case or the “showing that a retailer knew or should have known that the product is unwholesome” concept as stated in Demars, we conclude, as did the trial judge, that the retailer, Schwegmann, is liable.
The candy was supplied to the retailer by Brach approximately every two weeks and was shipped in cardboard boxes. The candy was enclosed in a plastic bag inside the cardboard box. The boxes were then sealed with a plastic tape. Upon reaching the retailer, the boxed candy was then stored in the produce preparation room in the warehouse. This room was air conditioned and heated in the same manner as the retail part of the store. These candies were then taken, as needed, by the retailer’s employee and placed in bins, furnished by the manufacturer, to be sold as “loose” candies. The chocolate covered cream candies, in the instant case, were individually wrapped and twisted closed at each end. They were not sealed.
According to the testimony of the store manager, the retailer had the responsibility of replenishing, cleaning and maintaining the bins as required. Any loose candy without a wrapper, foreign material or dirt were removed from the bin. According to this *606 witness and according to the produce manager, who had the direct responsibility for maintaining the Brach candy bin on a daily basis, the older candy was removed from the bin and the fresher candy was placed at the bottom with the older candy placed on top. The store manager, however, stated that on occasion he had observed that the bins were dirty. Since this was a popular candy, from time to time it was obtained from other Schwegmann stores when the need arose. The manager did not know how long their other stores had the candy in their possession before delivery.
One of the plaintiffs, Linda Mixon, stated that on the night the candy was eaten and after the insects had been discovered, she and others (who had eaten the candy) inspected some of the remaining wrapped candies and found some of them to be “old”, “turning white”, and contained “maggots”. She further stated that she and another plaintiff went back to Schwegmann’s approximately three days after the incident, inspected the bins and found dirt and broken pieces of candy.
An expert in Entomology stated that his laboratory examination of some of the pieces of chocolate covered cream candies, purchased by plaintiffs, confirmed the presence of insects in the candy. He indicated that there existed holes in the chocolate covering made by the insects as they entered the inner cream part of the candy. According to his testimony, a growth of insects from the larvae stage required a growth period of from two weeks to a month. He indicated further that the insects could easily enter the candy either from tightly or loosely wrapped covers, as in the instant case. This expert explained that a sealed, enclosed bag, or similar type of containerization would prevent infestation by these insects.
The evidence considered, we conclude that it is more probable than not that the infestation occurred either while the individually unsealed candies were in the Schwegmann warehouse or in the bin. Under the circumstances, we find that Schwegmann knew or should have known of the existence of the possibility of infestation. The Court properly found Schweg-mann liable.
LIABILITY OF MANUFACTURER — BRACH
A slightly more difficult problem is posed in the determination of whether or not the manufacturer is liable. In the landmark case of LeBlanc v. Louisiana Coca Cola Bottling Co., 221 La. 919, 60 So.2d 873 (La.1952), the Court stated that a plaintiff who consumed a part of a soft drink which contained foreign matter is entitled to rely on the manufacturer’s implied warranty that the product is safe for human consumption. See also Loyacano v. Continental Insurance Company, 283 So.2d 302 (La.App. 4th Cir. 1973); Stelly v. Gerber Products Company, 299 So.2d 529 (La.App. 4th Cir. 1974), writ refused 302 So.2d 616 (La.1974). In our case, however, virtually no evidence exists in the record to show that infestation of the candy occurred prior to receipt by Schwegmann’s of the boxed merchandise.
Nevertheless, the manufacturer Brach, warranting that the food is absolutely free from harmful or deleterious substances, and knowing that the candies were to be sold by the retailer as “loose” candies in bins furnished by the manufacturer, after storage in a retailer’s warehouse, has the duty of using wrapping methods which would best prevent insect infestation. As indicated by the expert witness Entomologist sealed containerization would prevent infestation more effectively than unsealed twisted-end wrappings. Under the circumstances, we conclude Brach knew or should have known that food merchandise packaged in unsealed individual wrappings was more susceptible to infestation than candies packaged in sealed bags. We conclude, therefore, as did the trial judge, the manufacturer is also liable.[1]
*607 QUANTUM
Finally, we find no merit to Schwegmann’s argument that the awards are excessive. The trial judge awarded the ten plaintiffs in this case amounts ranging from $350.00 to those persons who suffered nausea, vomiting and diarrhea down to $100.00 for those persons who suffered only nausea. In addition, medical expenses incurred by four of the plaintiffs were awarded.
In the case of the two wage earning adult male plaintiffs, they returned to work on the following day and suffered no loss of earnings. They did complain of nausea on the evening and night of the incident. The awards to these two plaintiffs amounted to $268.00 each. The two most seriously affected female adults, who suffered nausea, vomiting and diarrhea, and required two visits to a physician were awarded the sums of $350.00 each. The two youngest children who had also undergone medical treatment were awarded $200.00 each. The evidence considered, we cannot say the awards were excessive.
Having so concluded, we affirm the judgment of the trial court.
AFFIRMED.

. Civil Code Article 2324 reads as follows:
“He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act.”