420 So.2d 540 (1982)
Lucille GREER, et al., Plaintiffs-Appellees,
v.
OUACHITA COCA-COLA BOTTLING COMPANY, INC., et al., Defendants-Appellants.
No. 14995.
Court of Appeal of Louisiana, Second Circuit.
September 20, 1982.
*542 William R. Coenen, Jr., Rayville, for plaintiff-appellee.
Theus, Grisham, Davis & Leigh by Brian E. Crawford, Monroe, for defendants-appellants.
Before PRICE, SEXTON and NORRIS, JJ.
NORRIS, Judge
Defendant, Ouachita Coca-Cola Bottling Company, appeals a judgment awarding plaintiffs general damages, past and future medical expenses, expert witness fees and attorney's fees, in this action in tort and redhibition for damages sustained as a result of the ingestion of a soft drink from a contaminated bottle. Plaintiffs, Lucille Greer and her husband, Eugene T. Greer, answer the appeal asking that certain additional items be taxed as costs and that the awards for future medical expenses and attorney's fees be increased. Defendant, James F. Harley, d/b/a Harley's Service Station does not appeal. We amend and affirm.
On October 20, 1980, while on her lunch break from Buccaneer Sportswear with Debra Coleson, plaintiff, Lucille Greer, purchased a ten ounce bottled Dr. Pepper from a vending machine at Harley's Service Station in Rayville. Mrs. Greer and Ms. Coleson then returned to the parking lot of the sportswear plant where they ate lunch sitting in the car listening to the radio.
Noticing nothing unusual about the taste or smell of the beverage, Mrs. Greer consumed the entire drink as well as crackers and peanut butter. Thereafter, her attention was directed to a brown, gummy substance coating the sides and bottom of the bottle. The testimony is conflicting as to who actually initially discovered the foreign substance in the bottle, Mrs. Greer claiming that Ms. Coleson made the initial discovery and Ms. Coleson claiming Mrs. Greer discovered the substance. However, shortly thereafter, Ms. Coleson left the vehicle and returned to work leaving Mrs. Greer who opened the car door and vomited. Mrs. Greer then returned to work after which she felt nauseated during the afternoon and "gagged" on two occasions prior to leaving work at 3:30 p. m.
After leaving work, plaintiff called her family physician, Dr. David Silas, and informed him of the incident. He testified that he told her to take Bentyl, a medicine she had at home. However, plaintiff testified *543 that he prescribed medicine for her which she picked up from the drug store.[1] After taking medication, plaintiff's condition improved and she returned to work the next morning with no apparent difficulty. However, her testimony and the company's work records reflect that she later missed one day's work that week because, according to plaintiff, she was nauseated and weak.
Several days later, Mrs. Greer took the bottle to her attorney whom she consulted to protect, in her words, "her legal rights." According to Dr. Silas' records, she made an office visit on October 29, 1980. She testified that around that time or shortly thereafter she developed diarrhea and that Dr. Silas prescribed Lomotil for this condition. However, the pharmacist's statement filed into evidence does not show a prescription for this particular drug.
Plaintiff again saw Dr. Silas on December 8, 1980 and December 17, 1980 complaining of diarrhea, nausea and vomiting after which he admitted her to the Richland Parish Hospital where she remained December 21, through December 23, 1980, and tests were conducted in an effort to determine the cause of her chief complaint, diarrhea. No bacterial or pathogenic cause for Mrs. Greer's symptoms was revealed by the testing.
Mrs. Greer further testified that after her release from the hospital, she continued to have periods of nausea, diarrhea and weakness until shortly prior to trial. She further testified that her nerves worsened and attributed this deterioration first to the loss of her job in April, 1981, but then later to the ingestion of the Dr. Pepper. She additionally testified that she was prevented from engaging in previous recreational activities, presented with difficulty in completing housework, and caused to work in discomfort as a result of her problems. To some extent, this was corroborated by the testimony of Ms. Coleson, her close friend Mrs. Beatrice Henry, and Mr. Greer.
The records of Dr. Silas reflect that he saw Mrs. Greer on eight occasions between October 29, 1980 and July, 1981 in addition to her hospitalization. Although the evidence revealed and Dr. Silas admitted that no pathogen or bacteria was ever isolated, he was of the opinion that many of the problems complained of resulted from the ingestion of the contents of the beverage. However, he further admitted that the length of time between the ingestion of the soft drink and the onset of the diarrhea made it likely and possible that during that period Mrs. Greer could have ingested something else that caused the problem.
The attendance records of Buccaneer Sportswear reveal the following absences of Mrs. Greer subsequent to October 20, 1980: October 22, 1980 [doctor's appointment]; October 31, 1980 [no reason stated, unclear as to amount of time lost]; November 19, 1980 [no reason stated, ¾ hour]; December 4, 1980 [no reason stated, ½ hour]; February 16, 1981; September 20, 1981; March 25, 1981 [6½ hours]; April 13, 1981.
After trial in written reasons for judgment, the lower court granted judgment in favor of plaintiffs awarding (1) $30,000 to Lucille Greer as general damages, (2) $165 to Lucille Greer as lost wages, (3) $883.40 to Eugene Greer for past medical expenses, (4) $250 as an expert witness fee to Dr. Silas, (5) $1000 to Eugene Greer as future medical expenses, and (6) $5,989 as attorney's fees, together with legal interest and cost.
On appeal, Ouachita Coca-Cola Bottling Company, Inc., contends that the trial court erred (1) in finding that plaintiff proved that the beverage was contaminated and that it caused the physical problems complained of by plaintiff, Lucille Greer; (2) in awarding to plaintiff an excessive amount of damages and attorney's fees, thus abusing its great discretion in this regard; and (3) in attaching any significant weight to the testimony of Lucille Greer which is alleged to be knowingly false and perjured.
Notwithstanding the assignments of error, we construe the real thrust of appellant's *544 argument to be that the trial court clearly abused its discretion in its award of damages and attorney's fees because it is conceded by appellant that plaintiffs are entitled to a recission of the sale, a return of the purchase price, reasonable attorney's fees, costs, expert witness fees and general damages.[2]
The record clearly supports the finding that Mrs. Greer purchased and ingested the contents of a bottle of Dr. Pepper which had not been properly cleaned resulting in the leaving of a brown, gummy substance containing dirt and two small slivers of glass with no pathogens in the bottle. We are further satisfied that the evidence preponderates that Mrs. Greer became nauseated and suffered some fairly significant degree of difficulty resulting from her drinking of the Dr. Pepper. See Reeves v. Great Atlantic & Pacific Tea Co., 370 So.2d 202 (La.App.3d Cir. 1979). By virtue of the stipulations of the parties, the record further establishes that the appellant was responsible for the manufacture of the contents, cleaning, filling, and sealing of the bottle in question. Therefore, the trial court was not in error in its finding in that regard.
Furthermore, it is well settled that recovery can be had for psychogenic symptoms even though the substance ingested may be sterile or harmless; thus, Mrs. Greer did not have to prove that the substance consumed contained a pathogen. Glasper v. Wright Root Beer Co., Inc., 216 So.2d 586 (La.App. 1st Cir. 1968). Thus, the trial court did not err in finding that the beverage purchased and consumed by plaintiff contained a foreign substance, i.e., dirt and glass slivers, and that it caused physical problems for Mrs. Greer.
The remaining assignments of error are necessarily related because it is the questionable quality of the evidence regarding the extent and causation of plaintiff's complained of injuries that appellant vigorously disputes.
A careful reading and analysis of the record reveals obvious inconsistencies and contradictions contained within Mrs. Greer's testimony in several respects. Initially, it is noteworthy that Mrs. Greer clearly testified in her earlier deposition and at trial that she suffered no previous problems with her stomach prior to October 20, 1980, and that she was in excellent health prior to that time. However, cross-examination and other evidence adduced at trial revealed that she had indeed experienced problems with her digestive system previously. Prior to 1975, Dr. Silas had treated her for gastroenteritis; then in 1975, she had undergone surgery for the removal of her gall bladder. In 1978, Dr. Silas noted that she was feeling bad on a daily basis with signs and symptoms of an ulcer including abdominal pains. In February and April of 1979, these symptoms recurred for several months. Dr. Silas further noted that she has suffered from a nervous condition intermittently since 1974, and Mrs. Greer admitted having problems with her nerves since the age of twenty-nine.[3] Not only was this confirmed by her husband, but he also testified that she had been scheduled for bladder surgery in May, 1980, which had to be postponed because of high blood pressure. The evidence further showed that prior to this incident Mrs. Greer suffered from headaches.
Thus, the evidence viewed in the light most favorable to the plaintiff clearly shows that prior to the ingestion of the Dr. Pepper, Mrs. Greer suffered from gastroenteritis, including nausea, cramping of the stomach, and constipation, gall bladder and bladder problems, ulcer-like symptoms, hypertension, nervousness, headachesmany of the same symptoms which she attributed to the ingestion of the Dr. Pepper.
Furthermore, Mrs. Greer testified that she had not missed even an hour's work at Buccaneer prior to this incident because of illness. However, the company records revealed, *545 and she did not deny that she missed September 8, 9, and 10, 1980 and October 15, 1980 [only five days prior to the incident] because of illness. It is noteworthy that between the time of the incident and her termination she missed at most only four full days of work and portions of at least four other days. Contained within the evidence offered to support Mrs. Greer's testimony as to the number of days which she had missed work because of illness which she attributed to the Dr. Pepper was the week during a portion of which she was hospitalized. She testified that she could have worked at least three days of that week and sought lost wages for those particular days. However, Mrs. Maggie Morris, personnel supervisor for Buccaneer, testified that the plant was in fact closed the week of December 20, 1980, resulting in no work being available for Mrs. Greer.
Additionally, we note that although Dr. Silas testified that he usually prescribed Lomotil for diarrhea, the pharmacist's statement of drugs purchased by Mrs. Greer between October 27, 1980 and August 15, 1981, shows no such drug. There is no corroborating evidence in the record of the purchase of any drugs by plaintiff after the latter date.
Finally, Dr. Silas did not treat Mrs. Greer after July, 1981, because he moved to Tennessee. Although Mrs. Greer testified that she was treated subsequently by Dr. Massingale for similar symptoms, we note that he did not testify nor were bills submitted into evidence for such treatment. It is significant that in her deposition taken on June 8, 1981, Mrs. Greer stated that she felt she was improving to such an extent that she could resume her normal activities and had experienced no difficulties for three weeks.
In Coco v. Winston, 341 So.2d 332 (La. 1976), the court stated:
... [B]efore a Court of Appeal can disturb an award made by a trial court ... the record must clearly reveal that the trier of fact abused its discretion in making its award. [Citations omitted.] Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. [Citations omitted.]
Since the finder of fact does have much discretion in fixing damages, the appropriate procedure for testing whether the trial judge abused his discretion is to determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the trial court. Schexnayder v. Carpenter, 346 So.2d 196 (La.1977).
In Reck v. Stevens, 373 So.2d 498 (La. 1979), the court further amplified their earlier holding:
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive.
* * * * * *
Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's "much discretion," La.Civ. C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, [citations omitted], or insufficient, [citation omitted]. Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case.
In the initial determination of excessiveness or insufficiency, an examination *546 of prior awards has a limited functionif indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) "similar" injuries, see Coco at 341 So.2d 334.
Applying the foregoing rationale after our careful review of the record, we conclude that the trier of fact clearly abused its discretion in making its award. The award is unreasonable and excessive since the evidence, as articulated hereinabove in a light most favorable to Mrs. Greer, does not realistically support a finding of any permanent injury, disability or extreme pain and suffering. Besides which, the record does not realistically support a finding that all of plaintiff's complaints resulted from the ingestion of the contents of the Dr. Pepper bottle nor does it support a finding that any future medical expenses are realistically warranted.
Further bearing in mind that we cannot simply substitute our judgment as to what we consider to be an appropriate award on the basis of the evidence but can only lower the excessive award to the highest point which is reasonably within the discretion afforded the trier of fact, we have reviewed and analyzed prior awards in similar cases.[4] Accordingly, we reduce the award for general damages to $5250 and deny any award for future medical expenses.
Although conceding that plaintiffs' are entitled to reasonable attorney's fees, we note that what constitutes "reasonable" attorney's fees allowed is also within the discretion of the trial court. Factors deemed worthy of consideration include the amount involved, the skill of the attorney, and the amount of work necessarily undertaken by the attorney. See Ray v. Superior Iron Works and Supply, Co., Inc., 284 So.2d 140 (La.App.3d Cir. 1973).
In support of the award, plaintiffs' attorneys testified as to the extent of their services and their expertise filing into evidence an exhibit which details 76.6 hours spent on this case and telephone expenses incurred in the amount of $44. Both attorneys for the plaintiffs testified that they charge $75 for this type of litigation and another local attorney testified he did not consider that hourly rate to be unreasonable.
*547 Our review of the pleadings, trial transcript, and brief filed on behalf of plaintiffs leads us to agree with the trial court that plaintiffs' attorneys are indeed skilled in their profession. However, this particular case involved no extensive pre-trial discovery, was not one of an extremely complicated or difficult nature and required no more than one day of trial time. A large percentage of the hours expended by counsel were for letter writing, telephone conversations, and reviewing letters and medical reports. We conclude that $3000 is the maximum total award which would constitute reasonable attorney's fees in this case and reduce the sum previously awarded to that amount. We deny additional attorney's fees for this appeal because defendant did not necessitate the appeal as to damages and attorney's fees. Wheat v. Boutte Auto Sales, 355 So.2d 611 (La.App. 4th Cir. 1978); Reeves v. Great Atlantic & Pacific Tea Co., supra.
Finally, in answer to this appeal plaintiffs assert that the trial court erred in failing to tax as court costs the fee of Monroe Diagnostic Laboratories, Inc., in the amount of $235, which includes the fee of Enviro-Med Laboratories, Inc. and the expert witness fee of Dr. John T. Goorley, who testified by deposition. The lab fee was incurred as a result of the analysis of the contents of the Dr. Pepper bottle and the information obtained therefrom was introduced at trial as a joint exhibit. Furthermore, Dr. Goorley's deposition was also introduced at trial as a joint exhibit. These items should have been allowed as costs. Therefore, the judgment will be amended to allow taxed as costs the fee of Monroe Diagnostic Laboratories, Inc., in the amount of $235 and a fee of $75 which we consider to be a reasonable fee for the deposition of Dr. Goorley. See Bush v. Williams, 74 So.2d 335 (La.App. 1st Cir. 1954); La.R.S. 13:4533.[5] The trial court did not abuse its discretion in fixing the expert witness fee of Dr. Silas at $250; however, this amount should have been taxed as an item of cost. La.R.S. 13:4533.
Accordingly and for the foregoing reasons the judgment appealed from is amended and the following, pertinent paragraphs are recast to read:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment is rendered in favor of Lucille Greer and against Ouachita Coca-Cola Bottling Company, Inc., in the amount of $5250 for past, present and future pain and suffering and emotional distress, and in the amount of $165 as loss of wages which said sums shall bear legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment is rendered in favor of Eugene T. Greer and against Ouachita Coca-Cola Bottling Company, Inc., in the amount of $883.40 for past medical expenses, together with legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment is rendered in favor of the petitioners and against defendant, Ouachita Coca-Cola Bottling Company, Inc., in the amount of $3000 as the attorney's fees for William R. Coenen, Jr., attorney for petitioners, together with legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant, Ouachita Coca-Cola Bottling Company, Inc., pay costs of court which shall include the fee of Monroe Diagnostic Laboratories, Inc., in the amount of $235, and the expert witness fees of Dr. David J. Silas, in the amount of $250 and Dr. John T. Goorley in the amount of $75.
As amended, the judgment is affirmed with the costs of this appeal to be divided equally between plaintiffs and appellant.
AMENDED, and as amended, AFFIRMED.
NOTES
[1] The drug store statement filed into evidence as an exhibit tends to corroborate Dr. Silas' version since it shows a prescription for Bentyl was not filled until October 27, 1980.
[2] Appellant contends that the award for general damages should be no more than $250.
[3] Dr. Silas had prescribed phenobarbital for Mrs. Greer for hypertension in the past and also prescribed valium for her nervous condition in 1977.
[4] Similar type cases reviewed were Horowitz v. Schwegmann Bros., etc., 376 So.2d 603 (La. App. 4th Cir. 1979), where awards from eating worm infested candy ranged from $200 to $350; Tate v. Winn-Dixie of La., Inc., 339 So.2d 1329 (La.App. 1st Cir. 1976), where award to plaintiff who ate corn from a can that contained a worm and visited the doctor twice and missed school for one week was $350; Sticker v. General Foods Corp., 324 So.2d 568 (La.App. 1st Cir. 1975) writ refused 326 So.2d 380 (La.1976), where plaintiff who drank coffee that had glass in can and suffered mild diarrhea for two or three days, then developed severe stomach cramps, worsening of diarrhea and rectal bleeding, which required visit to doctor and emergency room and prescription medicine and did not miss work but who worked in discomfort received $1500 (original award was $5000 and was reduced by Court of Appeal); Lawson v. Coca-Cola Bottling Co. of Lake Charles, 287 So.2d 804 (La.App. 3d Cir. 1973), writ refused 290 So.2d 908 (La.1974), where young boy who drank coke that had wire and residue in it and was nauseated for one night received $400; Simmons v. Baton Rouge Coca-Cola Bottling Company, Ltd., 282 So.2d 827 (La.App. 1st Cir. 1973), where plaintiff who drank Tab with decomposed moth in it and vomited three times but missed no work received $200; Mushatt v. Page Milk Company, 262 So.2d 520 (La.App. 4th Cir. 1972), where plaintiff who used canned milk and suffered from food poisoning with nausea and diarrhea which cleared up within several days but who thereafter became very nervous and as a result of the occurrence and had to continue treatment for her nerves for a considerable period of time was awarded $650.

In the recent case of Wright v. Ouachita Coca-Cola Bottling Co., Inc., 415 So.2d 309 (La. App. 2d Cir. 1982), we affirmed a lower court award of $2000 for a plaintiff who drank a coke with a foreign substance, vomited, missed more than four days of work, had several visits to the doctor, was placed on a bland diet and was still complaining of stomach pains at time of trial. We noted however in this opinion:
A review of the record convinces us that while this award is somewhat high, it is not an abuse of the trial judge's much discretion in light of the injuries suffered by the plaintiff.
[5] La.R.S. 13:4533 provides:

The costs of the clerk, sheriff, witness' fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs.