592 So.2d 916 (1991)
Wendy Ann MOLAISON
v.
DENNY'S INC.
No. 91-CA-624.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 1991.
*917 John H. Brooks, Gretna, for plaintiff/appellant.
Lawrence J. Centola, Jr., Paul J. Politz, Robert J. Burns, Jr., New Orleans, Robert J. Neal, Metairie, for defendant/appellee.
Before BOWES, DUFRESNE and CANNELLA, JJ.
CANNELLA, Judge.
Appellant, Wendy Ann Molaison, appeals the award for damages as a result of injuries she sustained after ingesting worms from a meal served at one of the restaurants of appellee, Denny's Inc. Appellee contends the judgment of the trial court should be affirmed relative to causation and damages. We amend the judgment of the trial court and, as amended, we affirm.
On September 4, 1989 at approximately 10:00 p.m., appellant and her fiancee (now her husband), Frank Zaccaria, Jr. went to a Denny's restaurant in Gretna for a late evening meal. Appellant ordered a salad containing lettuce, cucumbers and extra ranch dressing. The salad was served with cucumber slices placed around the side of the plate, but all the ingredients were partially immersed in the dressing.
After appellant had eaten most of her salad, she turned over a slice of cucumber, to cover both sides with dressing. She immediately observed a white worm or "maggot" lying on the side of the cucumber that had been in the dressing. She became nauseated and rushed to the restroom. Her fiancee, not knowing the cause of her sudden illness, followed her and informed one of the waitresses. The waitress, Bernette Carter, went into the restroom to check on appellant. The waitress returned and told him that she was vomiting and that she had eaten worms. Mr. Zaccaria and the waitress returned to the table. Before the salad was removed, Mr. Zaccaria saw a white worm on one of the cucumber slices. After the appellant began feeling better, she and Mr. Zaccaria described the incident to the Denny's manager, Georgia Wiggins, who wrote an incident report.
Following the incident, the couple left Denny's for the appellant's home. On the way she became sick and began vomiting again. Mr. Zaccaria took her to a local hospital emergency room. While there, appellant continued to be sick and white wormlike objects were observed in her vomitus by one of the nurses. Appellant was extremely upset and began crying. She was given a charcoal drink and two injections to eliminate possible toxins in her system. Appellant eventually became calmer and she was discharged to go home.
Appellant's condition deteriorated. She continued to suffer nausea, vomiting, stomach cramps and also began to exhibit psychological problems. She experienced insomnia, nightmares involving babies and worms, became obsessive and compulsive about personal and housekeeping cleanliness, entertained suicidal thoughts and eventually withdrew from society.
Appellant and her fiancee were married shortly after the incident. At first she continued to work at her husband's law office. Later her condition deteriorated and she did not work any longer. The couple no longer plan to have children, their home life is tense and their sex life is diminished. Appellant's psychological diagnosis is post-traumatic stress syndrome, compulsive-obsessive disorder and depression. In addition, the anxiety and stress *918 has caused appellant to develop temporomandibular joint dysfunction (TMJ).
Appellant filed suit on November 15, 1989 and trial was held on December 17, 1990. On March 7, 1991 the trial judge rendered judgment in favor of appellant in the amount of $27,600.00. A third party action filed by Denny's against the supplier of the cucumbers was dismissed by the trial court.
On appeal, appellant asserts the trial judge erred in limiting the award to $27,600.00. Appellee contends the award is supported by the evidence.
The uncontested evidence at trial showed appellant ingested one or more worms. It also showed that she suffered severe physical and psychological problems which in turn caused her to develop TMJ.
Dr. Larry Giambelluca, a family-medicine physician, testified that the appellant saw him on September 14, 1989, complaining of vomiting, sleeplessness and the inability to eat or drink anything other than 10-K and Tic-Tacs because of the incident. He gave her a stomach medicine and an anti-depressant for sleep. He diagnosed her condition as food poisoning. She returned on October 11, 1989 with the same complaints. After an examination, he found her stomach tender. He diagnosed her as suffering from gastroenteritis, secondary to food poisoning and possible parasitis. The doctor prescribed the same medication, Carafate and Tagamet to soothe the stomach, Bentyl to remove toxins and Limbitrol, an antidepressant. Appellant returned on November 9, 1989 with the same complaints. Dr. Giambelluca referred her to a psychologist, Dr. Wesly Brockhoeft, who referred her to a psychiatrist, Dr. Joy Siegrist.
Dr. Giambelluca testified that he had treated appellant for adolescent crisis problems about 4 years before the incident. At that time he prescribed a mild anti-depressant. He stated he saw her from 1982 through this incident for various viruses and mumps. He testified she had gastroenteritis with dehydration in April, 1989 from food poisoning at another local restaurant. Also, her mouth was cut by glass on french fries from a fast-food restaurant later the same month. The latter incident was supported objectively by redness and a cut in her mouth.
Dr. Joy Siegrist began treating appellant in October, 1989 and continued to treat her. She testified that her history prior to this incident showed no abnormal behavior or symptoms. She stated appellant suffered from sleep difficulties, crying episodes, nightmares about maggots, death and dead babies, chronic fatigue and suicidal thoughts. She testified appellant was unable to eat solid foods because of association with the worm incident and she only drank clear liquids. She stated appellant became compulsive-obsessive about housekeeping and her personal grooming, taking two to three baths daily and constantly vacuuming the house.
Dr. Siegrist treated appellant with various medicines including Prozac, Xanax, Anaframil, Desyrel, anti-depressants and sleep medications. She improved somewhat, particularly regarding the suicidal impulses. She testified that psychotherapy was postponed because appellant was too sick at first to respond. The doctor advised appellant to postpone her wedding. She also said the vomiting pattern was traceable to the worm episode and noted appellant had a recurring dream of a child with maggots.
Dr. Siegrist testified that the appellant is psychologically disabled with chronic posttraumatic stress syndrome, compulsive-obsessive behavior and depression. At one point she considered hospitalization and/or electric shock therapy, but discarded those options for the time being. The doctor stated that the appellant's prognosis was poor and she would need treatment for life.
Dr. Natchez Morice, Jr., appellant's dentist, also testified. He stated that the appellant developed TMJ syndrome as a direct result of clenching and grinding her teeth at night. He testified that stress and anxiety can cause the clenching and grinding and eventually TMJ syndrome. He explained that the disc in the mandible becomes sore and the teeth become extremely sensitive from the enamel being worn down. Dr. Morice testified that he treated the appellant with a splint appliance to *919 wear at night to keep the upper and lower teeth apart. However, because her grinding is intense, she has broken a couple of splints.
Dr. Morice stated appellant will eventually need all of her teeth capped, at a cost of $16,000.00, because the teeth are wearing down due to the grinding. However, he is unable to perform the restorative work while she still grinds her teeth. He stated her emotional problems must be alleviated before the grinding will stop.
Mary Ann Molaison, appellant's mother, and her husband, testified to her emotional break-down. They stated she vomits daily, is fanatic about cleanliness, has withdrawn from society, has crying episodes, dreams about maggots, and suffers from sleeplessness. Mrs. Molaison stated that she also says she feels unclean. She testified that the appellant, who was eighteen at the time of the incident, was a normal, sociable, active and outgoing teenager prior to the incident. Mr. Zaccaria agreed and added that her happy personality was one of her attractions for him. He testified that the couple were married a month following the incident, as previously planned. She was developing severe emotional problems and continuing to suffer physical symptoms. However, she did not want to cancel their plans because the invitations had already been sent. He stated her condition worsened over time, and although he understands her problems, the marriage has been under extreme stress causing arguments and a non-existent sex life. He testified that they wanted to start a family immediately because of his age (33 years old), but were forced to postpone those plans because of her instability and emotional handicap. Mr. Zaccaria noted that they basically have no social life because she rarely leaves the house. He also reiterated the symptoms and behavior heretofore set forth by the physicians. In addition, Mr. Zaccaria said that his wife's aversions have extended to most television programs and movies as well as to many food items such as rice and macaroni, which remind her of worms.
Appellant testified that her life has become a nightmare. She stated she has no friends and barely has a husband. She added that her teeth and jaw hurt all the time from clenching and grinding. She also went into detail about her other symptoms.
Appellant and Mr. Zaccaria were questioned about pending or prior litigation instituted by her. They testified to a defamation suit and an auto accident case in which she was sued. The testimony indicated that she also had been involved in an action for a defective dining room set and an action against a dry cleaner.
The trial judge awarded $27,6000 although he noted she proved "substantial damages". However, the trial judge stated, he did not believe the incident was the sole cause of her problems and that the testimony showed a lot of things working together caused the illness. He awarded her $600.00 for past medical bills, $12,000.00 for pain, suffering and mental anguish for the year following the incident, $10,000.00 for future medical bills and future pain and suffering and mental anguish, and $5,000.00 for dental costs.
In a personal injury case the plaintiff bears the burden of proving causal relationship between the accident and the complained of injuries. American Motorist v. American Rent-All, 579 So.2d 429 (La.1991). However, a defendant takes his victim as he finds him and is responsible for all the natural and probable consequences of his tortious conduct. Id. Where a pre-existing injury or condition exists, defendant must compensate the victim for the full extent of the aggravation to that condition. Id. Appellant had no TMJ syndrome symptoms prior to the incident. Therefore, all of those symptoms were caused by the incident and the trial judge was erroneous in this respect. Appellant did have some intestinal sickness symptoms before the incident. The trial judge found that and this court will not disturb that finding. These symptoms, however, show that the appellant had a very sensitive stomach. Appellee did not *920 cause that condition, but is responsible for its aggravation.
In reviewing an award for damages, the trial judge or jury is vested with much discretion. American Motorist, Id. Before an award may be disturbed, the reviewing court must determine that the trier of fact abused its discretion. When the appellate court finds the abuse of discretion, the award may be disturbed by lowering it to the highest point or raising it to the lowest point which is reasonably in the trier of fact's discretion. Coco v. Winston Industries, Inc. 341 So.2d 332 (La.1976); Buquoi v. Allstate Ins. Co., 556 So.2d 163 (La.App. 5th Cir.1990).
In this case, appellant's past medical expenses totaled $2,221.00, ($1,521.00 for Dr. Morice and $700.00 in pharmacy bills), which is more than the $600.00 awarded by the trial judge. That amount did not consider the psychiatric fees at $90.00 per hour per visit. Thus the award for past medical expenses is an abuse of discretion and must be raised to reflect the evidence. We find an appropriate amount is $3,841.00, ($2,221 plus $1,620 for 18 visits to Dr. Siegrist at $90.00 per hour).
We likewise find the general damage award and the future medical award to be inadequate based on the evidence. In this respect we note TMJ cases range from $25,000 to $68,000 depending on whether other injuries existed and the severity of the problem.[1] Post-traumatic stress syndrome cases generally are associated with other injuries and range from $60,000 up.[2]
Based on our review of the facts of the case and the applicable jurisprudence we find the lowest award appropriate for appellant's TMJ syndrome and psychological disorder to be $50,000, ($25,000 for the TMJ and $25,000 for the psychological damage).[3] Therefore, the judgment will be amended accordingly.
We hereby amend the trial court judgment to increase appellant's award of past medical expenses to $3,841, future dental expenses to $16,000 and physical and mental pain and suffering, past, present and future to $50,000. The judgment is affirmed in all other respects.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] See: Friedrichs v. State Farm Fire & Cas. Ins., 496 So.2d 496 (La.App. 1st Cir.1986); Merrill v. Jones, 552 So.2d 466 (La.App. 4th Cir.1989) and Adamson v. City of Lafayette, 521 So.2d 1258 (La.App. 3rd Cir.1988).
[2] See: Weaver v. Siegling, 569 So.2d 97 (La.App. 4th Cir.1990); Mesa v. Burke, 506 So.2d 121 (La.App. 5th Cir.1987); Breaux v. Ray Young, Inc., 397 So.2d 1384 (La.App. 3rd Cir.1981); American Motorist v. American Rent-All, supra.
[3] Defendant cites cases involving ingestion of deleterious substances with awards ranging from $300.00 to $5,250. However, we find those cases inapplicable since the damages are not similar to the damages here. Cases cited: Dorowitz v. Schwegmann Bros., 376 So.2d 603 (La.App. 4th Cir.1979); Tate v. Winn-Dixie of Louisiana, Inc., 339 So.2d 1329 (La.App. 1st Cir. 1976); Sticker v. General Foods Corp., 324 So.2d 568 (La.App. 1st Cir.1975); Simmons v. Baton Rouge Coca-Cola Bottling Co., Ltd, 282 So.2d 827 (La.App. 1st Cir.1973); Green v. Ouachita Coca-Cola Bottling Co., 420 So.2d 540 (La.App. 2nd Cir.1982).