CANNELLA, Judge.
Plaintiffs, Gary Breen and Laurie Breen, individually and on behalf of their minor children, Chaya and Aaron, appeal from a jury verdict against them and in favor of defendants, Gloria Soileau (Soileau) and State Farm Mutual Automobile Insurance Company (State Farm), both as liability insurer of Soileau and as uninsured/underin-sured carrier of plaintiffs. We affirm.
*865 An automobile accident between the parties occurred on February 11, 1990 in Me-tairie, Louisiana. Soileau, driving north on David Drive at approximately 20 miles per hour, collided with the rear of a car driven by Gail Smira, who was stopped for a red light 'at the intersection of Amanda Street. Smira rear-ended a car occupied by William and Joyce Yandeventer, who rear-ended plaintiffs’ car. The Vandeventer car sustained a broken license plate light. There was no other damage to the other cars and no one reported injuries at the scene of the collision. Smira later recovered $2,000 from State Farm for injuries to her neck in the accident. None of the other drivers or passengers, except for the plaintiffs, claimed injuries in the collision.
On May 30, 1990, plaintiffs filed suit against Soileau and State Farm for neck and back injuries to the four Breen family members. A jury trial was held on October 29 and 30, 1991. The jury found Soi-leau negligent and the cause of the collision, but determined that the injuries claimed by plaintiffs were not caused by the accident.
On appeal plaintiffs assert that the jury erred in finding that the medical expenses and injuries were not caused by the accident. Plaintiffs assert that State Farm paid $53,914.20 in medical expenses under the policy and that factor, plus the uncon-troverted evidence, showed that the injuries were sustained in the collision. Plaintiffs cite West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979) for the proposition that where the evidence is uncontroverted and there is no sound reason to reject it, the appellate court is not bound to affirm.
The medical evidence showed that all of the plaintiffs were treated by a chiropractor, Dr. Harold Ehrenberg, for a minimum of one year, totalling $20,000. The complaints varied, but were similar in some respects. Mr. & Mrs. Breen and Chaya complained of neck pain. Mr. & Mrs. Breen and Aaron complained of back pain. Chaya allegedly suffered headaches, shoulder and arm discomfort, while Mr. Breen included pain in his left leg and arm and hand tremors in his complaints. The children only saw Dr. Ehrenberg, but Mr. & Mrs. Breen were also seen and treated by two orthopedic surgeons, Dr. Courtney Russo (on two occasions in March, 1990 and April, 1990), and Dr. James Laborde (Mr. Breen from May, 1990 until October, 1991 and Mrs. Breen from May, 1990 until July, 1991).
Mr. Breen was initially diagnosed with back and neck strain by Drs. Ehrenberg and Russo. Dr. Laborde found bursitis of the hip with possible sciatica of the back and elbow, and neck and back strains. He was treated with heat, physical therapy, electrical stimulation and medications by the doctors fort over a year and a half and was eventually given cortisone shots to his hip for the bursitis on a regular basis. During the period when his symptoms failed to significantly improve, he was given a CT scan which showed a minor bulge at the L4-5 level which may or may not have been present at the time of the accident. Dr. Laborde later diagnosed Mr. Breen with back neuritis and possible contusion to the nerve. He was eventually referred to the Touro Infirmary Pain Clinic in 1991, where he remained for one month under the treatment of Dr. Richard Morse.
Dr. Morse determined that Mr. Breen suffered from nerve root irritation and confirmed the bursitis diagnosis. He also diagnosed Mr. Breen with depression, caused by anger and frustration with his continuing pain, which was seriously interfering with his work and family life. Upon Mr. Breen’s discharge, he remained under the care of both Dr. Morse and Dr. Laborde.
Mr. Breen was also seen by Dr. Mark Juneau on July 2, 1990 at the request of State Farm, to render an independent medical opinion. He concluded that Mr. Breen suffered from bursitis.
Mrs. Breen was treated by Dr. Ehrenberg, Dr. Russo and Dr. Laborde with heat, massage, and physical therapy for her neck and back complaints. She was diagnosed with neck and back sprains, and was treated for at least one year following the accident.
*866 Chaya and Aaron Breen were seen intermittently by Dr. Ehrenberg, for a year. The treatment was similar to Mrs. Breen’s.
Other medical evidence showed that Mr. Breen had been involved in a serious accident in 1986, when he and a friend, walking along a road, were struck by a car driven by a drunk driver. His friend was killed and Mr. Breen sustained fractures to his elbow and leg and severely bruised his left hip. Also, Dr. Ehrenberg treated Mr. Breen until December, 1989, two months before this accident, for headaches.
All of the plaintiff’s doctors testified that they believed the injuries of the plaintiffs’ were caused by the accident herein. They stated that they were told by Mr. Breen about the 1986 accident, but believed he had reached recovery from those injuries. However, Dr. Russo and Dr. Morse additionally testified that poor posture and tension could create pain and abnormal spine straightening in Mr. Breen. Dr. Morse agreed that Mr. Breen’s extreme stress level could affect his pain tolerance and depression. Dr. Laborde stated that Mr. Breen’s bursitis could have been caused by the injury in 1986. Dr. Laborde, while recognizing the chiropractor’s value in the conservative treatment plan of all of the plaintiffs, stated that he believed the number of visits and length of time the plaintiffs saw Dr. Ehrenberg was excessive.
The testimony of the doctors indicated that neither Mr. nor Mrs. Breen appeared to be malingering or the types of persons to fabricate injuries for secondary gain. They admitted however, that their opinions were, based on the history given by the patient, and that the complaints were basically subjective in nature. It was noted that Mr. Breen’s mild bulging disc and bursitis could have existed prior to the accident.
The testimony of lay witnesses was also introduced at trial to corroborate the plaintiffs’ injuries. Mr. Breen’s supervisor and co-workers noticed a change in his demean- or after the accident.
Marquis Jones, plaintiff’s supervisor, and Dean Triche, his office manager, testified that Mr. Breen appeared to be in pain after the accident. Mr. Jones testified that Mr. Breen had to miss work after the accident because of his injuries and that, when he would come into the office, after a few hours, he would have to lay on the floor to relieve his pain. Mr. Triche, testified that he usually saw Mr. Breen in his office three to four times a week prior to the accident. Following the accident, Mr. Breen’s visits dropped to once or twice a month. He also testified that, although Mr. Breen limped prior to this accident, from the 1986 accident, the limp became more pronounced after this collision. Mr. Triche stated that Mr. Breen did not complain of pain before, but did so following the 1990 accident.
Both Mr. Breen and his wife testified regarding their injuries and the children’s injuries. They both noted that the collision caused a jolt, which threw them back and forth, despite the fact the family used seat-belts. Mr. Breen stated that he began to develop pain over a period of 24 hours in his left elbow, knee, shoulder, neck and back. He stated that Mrs. Breen complained of stiffness in her neck and the children had various complaints of soreness or stiffness in their necks. Mrs. Breen confirmed this in her testimony and added that Chaya complained about her upper back and Aaron had discomfort in his mid-back. She stated that neither child had these complaints previously. Mr. & Mrs. Breen testified that Chaya was nauseated at the scene. Mrs. Breen added that Chaya was shaken and said her “tummy” hurt after the accident. The couple did not report these complaints to the investigating officer or other parties involved in the collision. Mr. Breen delayed medical treatment to see if their symptoms would clear up.
Mr. Breen stated that his work production dropped drastically, because he no longer was able to sit and move about without developing severe pain requiring him to lay down. Before the accident, he worked from 6:00-7:00 a.m. until 5:30-6:30 p.m. After the accident, his hours gradually decreased to a couple of hours per week, if at all. He stated that pain increased with the frequency of his sitting and work *867 attempts. He testified that, for the trial, he was taking the maximum medications to be able to sit quietly. He also stated that he limited his activity the week before trial, so that he could sit quietly for the duration of the trial.
Mr. & Mrs. Breen were questioned about why the family was never treated, or their injuries discussed, with Mrs. Breen’s father, who is a medical internist. They were unable to explain this omission, although they stated that the family was on good terms. Mrs. Breen stated that their social life and intimacy have been severely curtailed because of his pain and that Mr. Breen has become moody and difficult since the onset of his pain.
Mr. Breen testified that he lost wages as a result of the accident. He worked as a New York Life Insurance salesman in 1988, after moving here from out of state. He introduced his W-2 forms for 1988 and 1989, and his tax returns for the years 1985 through 1988. At the time, he had not filed his 1989 and 1990 returns but had received an extension. His W-2 forms showed an income of $38,112 for 1988 and $24,715.89 for 1989. In 1985 he reported gross income of $77,540, which dropped to $7,955 in 1986 due to the first accident. In 1987 plaintiff earned $29,585.89, which increased to $70,672.07 in 1988. He testified that he expected a severe drop in income after the accident herein, because he was unable to develop clients or to maintain his largest clients who reside in Dallas.
Marquis Jones, of the New York Life Insurance Company, stated that the company classifies sales personalities according to type. Mr. Breen is an analytical type salesman, which means he is expected to sell larger policies, but is slower in his working methods. Those types reach the top eventually, if they can survive the slow start. He stated that Mr. Breen began exceptionally well. His contract with the company allowed him a three year training subsidy until his renewal commissions began to replace it. Mr. Breen earned $43,-000, plus a $10,000 training allowance, from July 1988 to June 1989. From June 1989 to February 1990 he only made $2,700, which was low even for an analytical type. He was never put on “probation”, but was counseled as early as May 1989. After the accident his production fell to almost zero.
The other people in the collision testified. They agreed that the collision caused a jolt in each vehicle, but little or no property damage. They agreed that no one claimed injury at the scene. William Vandeventer stated that when his car hit the plaintiffs’ vehicle, the impact was minimal. He testified, however, that the impact to his car by Smira was a “pretty good” jolt. Photographs were introduced showing the lack of property damage.
In a personal injury case, the plaintiff bears the burden of proving a causal relationship between the accident and the complained of injuries. American Motorist v. American Rent-All, 579 So.2d 429 (La.1991). However, a defendant takes his victim as he finds him and is responsible for all the natural and probable consequences of his tortious conduct, supra. Where a pre-existing injury or condition exists, defendant must compensate the victim for the full extent of the aggravation to that condition. Supra, Molaison v. Denny’s Inc., 592 So.2d 916 (La.App. 5th Cir. 1991).
In this case, the jury rejected plaintiff’s demand for" damages, finding that they failed to prove that their injuries were caused by the accident. The medical testimony was uncontroverted, but it was based on the history given by Mr. & Mrs. Breen. Apparently, the jury did not believe that severe injuries could have occurred from such a minor collision. This is a factual finding, which this court may not modify in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979).
After our review, we find the jury was not clearly wrong. Accordingly, the judgment of the trial court is hereby affirmed.
Costs are to be paid by appellants.
AFFIRMED.