I t STEWART, J.
At issue is whether the trial court erred in finding that Wanda Avant failed to prove a causal relationship between an automobile accident and an ankle injury which manifested itself seven to ten days after the accident. Finding no error in the trial court’s judgment, we affirm.
FACTS
On March 25, 1996, while stopped behind traffic at a signal light on U.S. Highway 80 in West Monroe, Louisiana, Avant’s Dodge Caravan minivan was hit from behind by a vehicle driven by Cathy Hendrix. When she realized that she would be hit, Avant pressed her right foot down on the *395 brake as hard as she could in an effort to prevent her vehicle from moving forward into the vehicle in front of her. The impact of Hendrix’ vehicle caused Avant’s upper body to push forward into the steering column. Avant’s foot remained on the brake. The minivan sustained damage to its rear and the steering column. Immediately after the impact, Avant experienced neck pain and pain along the left side of her back. An ambulance transported her to the Columbia North Monroe Hospital where she was examined by Dr. Clinton Guillory, diagnosed with mild whiplash injury, and released with a prescription for Robaxin and instructions to take it easy for a couple of days. Avant remained home for two days then returned to her job as a teacher. Her neck and back injuries improved substantially after two weeks.
About seven to ten days after the accident, Avant began having pain in her right ankle. On April 19, 1996, she contacted her family physician, Dr. Floyd Jones, regarding the ankle pain. On April 25, 1996, Dr. Jones gave Avant orders to obtain an x-ray of her ankle. The x-ray revealed no problems. Then, on April 27, 1999, while rising from a recliner with her infant grandchild in her arms, Avant heard a “pop” and felt pain in her right ankle. She was unable to place any weight Don the ankle and fell forward. Her husband took her to the emergency room at Columbia North Monroe Hospital where she was again treated by Dr. Guillory. An x-ray of the ankle showed a small nondisplaced fracture of the medial malleolus, a bone that holds the ankle bone inside its socket. Avant then sought treatment from Dr. Douglas Liles, an orthopaedic surgeon, who placed her in a short leg walking cast. Dr. Liles last saw Avant for her ankle injury on June 3,1996.
Avant filed suit for damages against Hendrix and Hendrix’ liability insurer, Illinois National Insurance Company. Avant also named her own uninsured motorist carrier, Prudential Property and Casualty Company, as a defendant. At the start of trial, the parties stipulated to the liability of Hendrix and her insurer. As such, the only issues remaining for trial were the quantum of damages and the causal relationship between Avant’s ankle injury and the accident. The trial court heard testimony from Avant, her husband, and Hendrix. The depositions of Avant’s treating physicians and an independent medical examiner were offered into evidence in lieu of live testimony. The trial court awarded Avant $2,850 in general damages along with related special damages for her neck and back injuries sustained in the accident. The trial court denied Avant’s claim for damages, including her husband’s claim for loss of consortium damages associated with the ankle injury. In his reasons for judgment, the trial court stated that Avant failed to show by a preponderance of the evidence a causal relationship between her ankle injury and the accident. This appeal followed.
DISCUSSION
In a personal injury suit, the plaintiff bears the burden of proving the causal relationship between the accident and any alleged injuries. American Motorist Ins. Co. v. American Rent-All, 579 So.2d 429 (La.1991); Chambers v. Graybiel, 25,840 (La.App.2d Cir.6/22/94), 639 So.2d 361, writ denied, 94-1948 (La.10/28/94), 644 So.2d 377; Harig v. State, Bd. Of Elementary & Secondary Education, 25,702 (La.App.2d Cir.3/30/94), 635 So.2d 485. A claimant’s disability is presumed to have resulted from the accident, if before the accident he was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows a reasonable possibility of a causal connection between the accident and the disabling condition. Housley v. Cerise, 579 So.2d 973 (La.1991); Harig, supra. Whether the accident caused the plaintiffs injuries is a question of fact *396 which should not be reversed absent manifest error. Housley, supra; Chambers, supra; Hang, supra.
In reviewing whether a trial court’s factual findings are manifestly erroneous, an appellate court does not question whether the trier of fact was right or wrong, but whether the conclusion was a reasonable one. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review where conflict exists in the testimony. Stobart, supra; Rosell v. ESCO, 549 So.2d 840 (La.1989). If the trial court’s findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse, even if convinced that it would have weighed the evidence differently. Stobart, supra; Housley, supra.
Avant contends that the trial court disregarded testimony that she began experiencing pain prior to the incident on April 27,1996 when she heard a “pop” and felt pain as shé attempted to rise from a recliner while holding her infant grandchild. In fact, Avant testified that she first noticed pain in her right ankle approximately seven to ten days after the accident. Avant points out that the opinion of Dr. Liles, the orthopaedic surgeon who treated her ankle injury, is that her injury resulted from the accident on March 25. Also in support of her position, Avant points out that the trial judge in his reasons for judgment stated that he |4found her to be credible. Based on her testimony as to when the pain began, Dr. Liles’ belief that her injury resulted from the accident, and the trial court’s statement regarding her credibility, Avant contends that she met the burden of proving the causal relationship between her ankle injury and the accident.
Our review of the record shows that the trial court found Avant to be a credible witness. However, nothing in Avant’s testimony establishes the accident as the cause of her ankle injury or explains how the injury resulted from the accident. Avant explained how the accident occurred. She testified that her right foot remained on the brake pedal and that her upper body pushed forward on impact into the steering column. Avant reported no ankle pain at the time of the accident. There was no bruising or swelling associated with the ankle. She was able to walk out of the emergency room upon discharge and resumed her normal work duties after two days. Avant candidly admitted that she did not notice the ankle pain until seven to ten days after the accident. Even then she reported no bruising or swelling of the ankle. The initial x-ray taken April 25 revealed no fracture. It was not until April 27, when ■ while attempting to rise from a recliner, Avant heard a “pop,” felt pain, and was unable to put any weight on her ankle, that an x-ray revealed a fracture in the ankle.
In his deposition, Dr. Floyd Jones, Avant’s family physician, stated that Avant first complained of ankle pain on April 19 and then again on April 25, at which time he gave orders for her to obtain an x-ray. When asked whether he believed the ankle injury was related to the accident of March 25, Dr. Jones replied, “It could well have been.” However, he also noted that Avant did not complain of ankle pain initially, such as when he saw her regarding her neck and back injuries on April 10, and that he could not say more probably than not whether the ankle injury was caused by the accident.
|RThe emergency room physician, Dr. Clinton Guillory, testified that Avant complained only of neck and back pain after the accident on March 25. He diagnosed her with mild whiplash injury and she was able to walk out of the emergency room on her own. Dr. Guillory stated that broken bones will show up immediately most of the time; however, there is always a possibility that injuries may not manifest themselves initially. Dr. Guillory also treated Avant when she returned to the emergency room on April 27. He reported that *397 Avant’s right ankle pain began two weeks prior and that she turned her right ankle and heal’d a loud popping when she got out of a recliner. Dr. Guillory’s examination of Avant’s ankle showed tenderness and mild swelling. The x-ray revealed a small fracture.
Dr. Douglas Liles, an orthopaedic surgeon, treated Avant for her ankle injury beginning April- 29. Dr. Liles described her injury as a nondisplaced fracture of the medial malleolus and explained that such an injury results from turning or torque movement which might occur where an individual comes down with full weight in a twisting motion that turns the ankle in or out. He explained that the same injury could also occur by the body or leg twisting on top of the ankle. Dr. Liles expressed the belief that Avant’s ankle injury was most likely connected to the accident on March 25 and that the injury could have resulted from Avant’s right foot being planted on the brake pedal while her upper body twisted from the impact. Dr. Liles’ opinion was based on his perception of Avant as a good historian. He stated that he had a “hard time doubting this woman.” However, the record also indicates that Dr. Liles’ opinion regarding the causal relationship between Avant’s ankle injury and the accident was based on his incorrect understanding that Avant began experiencing ankle pain and had an x-ray taken only two days after the accident. He stated that it would be “very odd” if no symptoms appeared until seven to ten days after the accident and that one would “almost always” expect to experience pain or see some swelling or bruising almost | ^immediately after an accident which results in such an injury. Finally, Dr. Liles admitted that he would be a little more skeptical if the symptoms did not begin until seven to ten days after the accident.
Lastly, the deposition testimony of Dr. Gordon M. Meade, an orthopaedic surgeon who performed an independent medical examination of Avant and reviewed her medical records, disputes Avant’s 'claim that her ankle injury is related to the automobile accident. According to Dr. Meade, Avant’s ankle injury was more than likely not related to the accident. Dr. Meade explained that for the injury to have resulted from the accident, complaints of pain or bruising should have been apparent at the time of the emergency room visit or within twenty-four hours. While he admitted that it may be possible for pain from such a fracture to be masked for several days, he did not believe that Avant, who was diagnosed with mild whiplash after the accident, was able to continue walking, and resumed working after two days, had the type of multiple injuries which would hide the ankle fracture.
Considering our careful review of the entirety of the record, we cannot say that the trial court was manifestly erroneous in finding that Avant failed to prove a causal relationship between her ankle injury and the accident of March 25. The ankle pain did not manifest itself until several days after the accident. Prior to that time, Avant was able to walk and carry on her duties at work. While Avant had no other explanation for the cause of the ankle pain, her testimony does not suggest how the accident resulted in the ankle injury. She testified that her right foot remained planted on the brake pedal and that her upper body pushed forward into the steering column. She did not suggest that either her upper body or ankle turned or twisted in such a way that would result in the injury. We do not and cannot question the trial court’s finding of Avant as a credible witness. The problem is not one of credibility; it is a problem of lack of sufficient support for the theory 17that the ankle injury was related to the accident. Even though Dr. Liles testified that he believed the injury was related to the accident, we are mindful that his belief was largely based on his understanding that Avant’s symptoms of ankle pain began only two days after the accident, rather than seven to ten days later. The testimony of the various medical experts suggests *398 the improbability of a causal relationship between the accident and the ankle injury. In light of this record, the trial court’s findings were reasonable.
CONCLUSION
For the reasons set forth, we find no error in the trial court’s denial of damages associated with Avant’s ankle injury. We affirm the trial court’s judgment at appellant’s cost.
AFFIRMED.