NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 1384

TYRONE ADGER

VERSUS                    MAR 0 3 2021

SERGEANT FORTUNE MONEKE, STATE OF LOUISIANA
THROUGH LOUISIANA DEPARTMENT OF PUBLIC SAFETY
& CORRECTIONS ELAYN HUNT CORRECTIONAL CENTER

Judgment Rendered:

* * * * * *

On Appeal from the Eighteenth Judicial District Court
In and for the Parish of Iberville
State of Louisiana
Docket No. 77,210

Hon. Tonya S. Lurry, Judge Presiding

* * * * * *

Donna U. Grodner                  Counsel for Plaintiff/Appellant
Baton Rouge, Louisiana            Tyrone Adger


Jeff Landry                       Counsel for Defendants/Appellees
Attorney General                  Sergeant Fortune Moneke and State
James L. Hilburn                  of Louisiana, through Louisiana
Jeannie C. Prudhomme             Department of Public Safety and
Assistant Attorney General        Corrections
Litigation Division
Baton Rouge, Louisiana


* * * * * *

BEFORE: McCLENDON, WELCH, HOLDRIDGE,
CHUTZ, AND PENZATO, JJ.

**WELCH, J.**

In this action for damages resulting from a slip and fall, the plaintiff, a former inmate, appeals a trial court's judgment finding that, although the defendant, the Louisiana Department of Public Safety and Corrections ("the Department"), was negligent and forty percent at fault for the plaintiff's slip and fall, the plaintiff was not injured as a result of the accident and awarded him no damages. For reasons that follow, we affirm in part, reverse in part, and render judgment.

## BACKGROUND

The plaintiff, Tyrone Adger, is a former inmate that was in the custody of the Department.[1] He was housed at Elayn Hunt Correctional Center (EHCC) on September 20, 2016, when he slipped and fell in water as he was returning to his cell on the Beaver 2 C-Tier unit. On September 1, 2017, Mr. Adger filed a petition seeking damages against Sergeant Fortune Moneke and the Department for the injuries he allegedly sustained as a result of the fall. Mr. Adger asserted that despite standing water all over the tier floor, Sgt. Moneke ordered him to walk to his cell through the water. Mr. Adger alleged that he began to carefully walk to his cell, but he slipped and fell, striking his back and head on the concrete floor. Mr. Adger alleged that as a result of the fall, he sustained injuries to his back and neck, and suffered from migraine headaches and nerve damage.

The matter proceeded to a bench trial on December 12, 2018, after which the trial court rendered oral reasons for judgment, initially finding that the Department was negligent for the wet floor by not taking any measures to either clean up or warn of the presence of the water. The trial court also found that Sgt. Moneke was without any fault, stating that it believed his testimony that he instructed Mr. Adger

---

[1] Mr. Adger testified at trial that he currently resides in Texas.

2

not to walk through the tier at that time. Additionally, the trial court found fault on the part of Mr. Adger for walking down the tier. The court attributed sixty percent of the fault to Mr. Adger and forty percent of the fault to the Department. With regard to damages, the trial court determined that Mr. Adger failed to prove that his pre-existing neck and back problems were made worse as a result of his fall and, therefore, did not award any damages. On April 10, 2019, the trial court signed a final judgment in conformity with its oral ruling, specifically finding that Mr. Adger was not injured as a result of the slip and fall incident and dismissed with prejudice Mr. Adger's suit against the defendants. From this judgment, Mr. Adger has appealed, essentially challenging the trial court's allocation of fault and its determination that Mr. Adger failed to prove damages, *i.e.*, that he did not sustain any compensable injuries or an aggravation of a pre-existing injury as a result of his fall.[2]

## LAW AND DISCUSSION

*Standard of Review*

Both the trier of fact's allocation of fault and its determination of whether the plaintiff proved that the accident caused the plaintiff's injuries (or an aggravation of a pre-existing injury) are factual determinations subject to the manifest error standard of review. See **Duncan v. Kansas City S. Ry. Co.**, 2000-0066 (La. 10/30/00), 773 So.2d 670, 680, cert. dismissed, 532 U.S. 992, 121 S.Ct. 1651, 149 LEd.2d 508 (2001) (providing that the allocation of fault or the finding of percentages of fault is a factual determination and as such, the trier of fact is owed some deference in allocating fault); **Stobart v. State through Dept. of**

---

[2] As set forth above, the trial court found that the Department was negligent for having the wet floor and for not taking any measures to either clean up the water or warn of its presence. Implicit in the trial court's determination in this regard was that the defendant had a duty to clean up the wet floor or warn of its presence, that the Department breached its duty by failing to do so, and that the Department's breach of its duty was the cause of Mr. Adger's fall. Although the Department (and Sgt. Moneke) filed an answer to appeal, it was subsequently dismissed as untimely. Accordingly, the only issues remaining are whether the plaintiff suffered any injuries when he fell on the wet floor and the allocation of fault between the parties.

**Transp. and Development,** 617 So.2d 880, 882 (La. 1993) (providing that a trier of fact's allocation of fault is subject to the manifest error or clearly wrong standard of review); and **Housley v. Cerise,** 579 So.2d 973, 979 (La. 1991) (providing that whether the accident caused the plaintiff's injuries is a factual question that should not be reversed on appeal absent manifest error).

A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. **Stobart,** 617 So.2d at 882 (La. 1993). Under the manifest error standard of review, a reviewing court may not merely decide if it would have found the facts of the case differently. **Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC,** 2014-2592 (La. 12/8/15), 193 So.3d 1110, 1115. Rather, to reverse a trial court's factual conclusions, the appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong. **Hayes,** 193 So.3d at 1115-16; **Stobart,** 617 So.2d at 882. This test requires a reviewing court to review the record in its entirety to determine manifest error. **Stobart,** 617 So.2d at 882. This court's determination is not whether the factfinder was correct, but whether the factfinder's conclusion was a reasonable one. *Id.*

Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. **Rosell v. ESCO,** 549 So.2d 840, 844 (La. 1989). Thus, where there are two permissible views of the evidence, the factfinder's choice cannot be manifestly erroneous or clearly wrong. **Hayes,** 193 So.3d at 1116; **Rosell,** 549 So.2d at 844.

4

*Allocation of Fault*

Louisiana Civil Code article 2323 provides that "[i]n any action for damages where a person suffers injury, ... the degree or percentage of fault of all persons causing or contributing to the injury ... shall be determined ...." This article further provides that "[i]f a person suffers injury ... as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss."

In determining whether a trial court was manifestly erroneous or clearly wrong in its allocation of fault, an appellate court is guided by the factors set forth in **Watson v. State Farm Fire & Cas. Ins. Co.**, 469 So.2d 967, 974 (La.1985). See **Duncan**, 773 So.2d at 680. In **Watson**, 469 So.2d at 974, the supreme court stated various factors may influence the degree of fault assigned, including:

> (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

According to Mr. Adger's testimony, on September 20, 2016, he was returning to his tier from a medical call-out when he saw standing water on the tier floor, which he believed was caused by another inmate flooding a cell toilet. Mr. Adger further testified that despite the obvious standing water, Sgt. Moneke ordered him to walk, while he was in full restraints,[3] down the tier to his cell without being escorted by the security staff. Mr. Adger explained that because the

---

[3] According to Mr. Adger, "full restraints" consists of "hand shackles, waist chain, shackles on your feet, and a chain running from your wrists to your feet."

5

floor was slippery, he was taking his time walking, but as he got in front of the cell where most of the water was standing, he slipped and fell. However, Sgt. Moneke testified that on the day at issue, inmates were pressure washing the windows on the tier when Mr. Adger returned to the tier lobby from the medical call-out.[4] Sgt. Moneke also testified that, since the inmates were almost finished washing the windows, he instructed Mr. Adger to wait with him in the lobby until the inmates had cleaned up the water so he could escort Mr. Adger back to his cell. According to Sgt. Moneke, Mr. Adger refused to obey his order and decided to walk by himself to his cell. About halfway down the tier, Mr. Adger slipped and fell.

In its ruling, the trial court, after determining that the Department was negligent for the presence of water on the floor, specifically stated that it believed Sgt. Moneke's testimony that he instructed Mr. Adger not to walk through the tier and that Mr. Adger disobeyed the order. Finding that Mr. Adger chose to walk through the tier, the trial court then determined that the Department was forty percent at fault for Mr. Adger's fall, that Mr. Adger was sixty percent at fault for his fall, and that Sgt. Moneke was free from fault. Mr. Adger's arguments on appeal challenging the trial court's determinations in this regard concern findings of fact and determinations regarding the credibility of the witnesses. The trial court had the opportunity to hear and observe the witnesses who testified at trial regarding the incident, and the manifest error standard of review demands great deference to the trial court's credibility determinations and factual findings regarding the allocation of fault. Unless those factual findings are clearly wrong, we will not disturb the trial court's credibility determinations. After a thorough review of the record, according due deference to the trial court's credibility determinations, and considering the factors set forth in **Watson**, we find the record

---

[4] The pressure washing was verified in the tier log book.

provides a reasonable basis for the trial court's allocation of fault. Therefore, having found no manifest error in the trial court's determination regarding the allocation of fault, we affirm that portion of the April 10, 2019 judgment finding Sgt. Moneke free from fault and dismissing Mr. Adger's claims against Sgt. Moneke, finding Mr. Adger sixty percent at fault in causing his own fall, and finding the Department forty percent at fault in causing Mr. Adger's fall.

*Proof of Damages or Injuries*

In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and the injuries complained of. **American Motorist Ins. Co. v. American Rent-All, Inc.**, 579 So.2d 429, 433 (La. 1991). A defendant takes the plaintiff as he finds him and is responsible for all natural and probable consequences of his tortious conduct. When the defendant's negligent action aggravates a pre-existing injury or condition, he must compensate the victim for the full extent of that aggravation. **Perniciaro v. Brinch**, 384 So.2d 392, 395 (La. 1980).

As previously set forth, Mr. Adger testified that he was in full restraints when he slipped and fell on the tier floor. Mr. Adger explained that because he was in full restraints, he was unable to move or use his hands to brace for the fall, so when he slipped and fell, he fell backwards and hit the back of his head "real hard." During Mr. Adger's testimony, he admitted that he had pre-existing back and neck problems, and the medical records in the record contain his prior complaints of neck, back, and head pain, as well as complaints of numbness in his fingers and/or toes. Nonetheless, Mr. Adger testified that as a result of the September 20, 2016 slip fall, "everything" had "got[ten] worse."[5] The medical

---

[5] Mr. Adger was asked:

Q: And what kind of problems do you have as a result of the slip and fall?

7

records submitted into evidence support Mr. Adger's testimony in this regard. On September 21, 2016, Mr. Adger completed a health care request form reporting back pain as a result of a slip and fall that occurred on September 20, 2016, due to the presence of water on the tier floor. He continued to report pain from that fall a week later, on September 27, 2019, wherein he reported a that he sustained a back injury from the fall with pain radiating to his neck. Another week later, on October 3, 2016, Mr. Adger again reported pain and discomfort from the slip and fall on September 20, 2016, wherein he injured his back and neck, and he requested an X-ray. Two days later, he again complained of back and neck pain and that he was awaiting an X-ray. Five days later, on October 10, 2016, he again presented with complaints of back and neck pain from the slip and fall on September 20, 2016.

Dr. Jonathan Roundtree, a medical doctor employed at EHCC since 2011, testified at trial regarding Mr. Adger's pre-existing diagnosis of torticollis, or spasms of the neck, and Mr. Adger's significant pre-existing back issues. According to Dr. Roundtree, Mr. Adger had an MRI in 2013 that indicated "five levels of bad discs," and that because of this pre-existing condition, any fall by Mr.

---

A:    I'm developing neuropathy in my feet, my ankles, my toes. I can barely - - I can pinch them, I can't - - I have no feeling in them. I developed headaches, you know, from the fall. You know, where I vomited numerous times. I have major problems with my back, my spine, from that. It got worse.

Q:    Are these - -

A:    Everything seemed to got worse since then.

Q:    Are these problems different from the problems you had before with the neck and back?

A:    Well, before I was just dealing with the torticollis. And, you know, it affected my back to a degree, but not as it - - as it - - as it has now.

Later, Mr. Adger was again asked about the slip and fall:

Q:    And tell the judge what type of problems you have:

A:    Well, neuropathy for one. Dealing with the neuropathy - - the pain shoots through, you know - - from my feet, you know, down to my feet and my ankles, my toes. And no feeling. You know, that - - that tingling sensation. You know, dealing with my back.

Adger directly on his back could be serious. Dr. Roundtree testified that the most probable cause of Mr. Adger's complaints of pain and numbness was impingement on the nerves in his back, which would "fit with the mechanism of injury with a slip and fall ...." While Dr. Roundtree further stated that the only way to really determine "what's going on with a disc problem is either to have an MRI or a CT [scan]," neither an MRI nor a CT scan were ever ordered following Mr. Adger's slip and fall. Since Mr. Adger was an incarcerated inmate at the time, he was not able to obtain medical care at any facility other than EHCC. Mr. Adger ultimately had an X-ray of his back, which indicated that Mr. Adger did not have any "breaks in his back;" however, the X-ray did not "rule out soft tissue injury with [his] disc problems."

Additionally, Dr. Roundtree testified regarding Mr. Adger's prescribed medications. Dr. Roundtree testified that Mr. Adger had been prescribed several medications before 2016. His medications in 2016 prior to the slip and fall included a muscle relaxer, a general pain medication, and one for nerve pain, and Mr. Adger's medications remained the same after his slip and fall.

The trial court, in its ruling, pointed out Mr. Adger's extensive pre-accident medical history regarding his cervical and lumbar issues and concluded that Mr. Adger failed to prove that his pre-existing injuries were made worse as a result of the fall. However, we find that the trial court's factual determination that Mr. Adger did not suffer *any* injury or aggravation of a pre-existing injury is not reasonably supported by the record and is clearly wrong. While the manifest error standard of review demands great deference to the trier of fact's findings, the uncontroverted evidence establishes that Mr. Adger had pre-existing disc problems, that any fall by him would be serious because of those pre-existing conditions, and that Mr. Adger was in greater pain after his fall in the standing water on September 20, 2016. Given this evidence, the only reasonable conclusion

9

is that Mr. Adger, who had a serious pre-existing disc condition and was in full restraints without the ability to brace himself, would have aggravated his pre-existing disc injuries and caused an increase in his symptoms, thereby suffering some damages, when he slipped and fell in standing water on the floor and hit the back of his head. Accordingly, we reverse the judgment of the trial court insofar as it found that Mr. Adger suffered no damages as a result of the September 20, 2016 slip and fall and dismissed Mr. Adger's claims against the Department.

Since there is a complete record of the case before us, we are in a position to review the evidence and reach our own conclusions concerning Mr. Adger's injuries and/or damages. While it is true that Mr. Adger had extensive back and neck issues and complaints of pain prior to the slip and fall, it is also true that a defendant takes a plaintiff as he finds him. Based on the testimony and evidence presented in this case, we find that Mr. Adger suffered from an aggravation of his pre-existing condition because the pain that he was having worsened following the accident. However, there is no evidence before us that Mr. Adger suffered any greater permanent damage after the fall. Similarly, Mr. Adger did not require any additional medication after the fall and appears to have experienced some minimal soft tissue injuries, which may have aggravated his pre-existing conditions for a short period of time. Therefore, we find that Mr. Adger demonstrated that he sustained some soft tissue injuries to his back and neck as a result of the September 20, 2016 slip and fall and that an award of $3,000 in damages would be adequate to compensate him for those injuries. Accordingly, we award Mr. Adger damages for his slip and fall on September 20, 2016, in the amount of $3,000, which sum shall be reduced according to his percentage of fault, *i.e.*, sixty percent, pursuant to La. C.C. art. 2323.

10

## CONCLUSION

For all of the above and foregoing reasons, the April 10, 2019 judgment of the trial court is affirmed insofar as it determined that the Louisiana Department of Public Safety and Corrections was forty percent at fault, that the plaintiff, Tyrone Adger, was sixty percent at fault, and that Sergeant Moneke was free from fault and dismissed the Tyrone Adger's claims against Sergeant Moneke; the judgment is reversed insofar as it awarded Tyrone Adger no damages and dismissed his claims against the Louisiana Department of Public Safety and Corrections; and judgment is rendered awarding the plaintiff, Tyrone Adger, damages in the amount of $3,000, which sum shall be reduced by his sixty percent fault for the accident. All costs of this appeal in the amount of $13,269.10 are assessed to the defendant/appellee, the Louisiana Department of Public Safety and Corrections.

**AFFIRMED IN PART; REVERSED IN PART; RENDERED.**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 1384

TYRONE ADGER

VERSUS

SERGEANT FORTUNE MONEKE, STATE OF LOUISIANA THROUGH LOUISIANA
DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS ELAYN HUNT
CORRECTIONAL CENTER

*PMc by JEW*****************************************************

**McClendon, J., dissenting in part.**

I must respectfully dissent in part. Based on the medical records presented and

the factual and credibility determinations made by the trial court, a reasonable basis

exists for holding that Mr. Adger did not suffer any injuries as a result of his fall.

Therefore, I find no manifest error and would affirm the judgment of the trial court.